UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL GRESHAM,

               Plaintiff,                    Case No. 1:12-cv-494

v.                                     Honorable Robert J. Jonker

RICHARD CZOP et al.,

               Defendants.

_____/

## OPINION DENYING LEAVE
## TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES

Plaintiff Michael Gresham, a prisoner incarcerated at Ionia Maximum Correctional Facility (ICF), has filed a complaint pursuant to 42 U.S.C. § 1983. Plaintiff seeks leave to proceed *in forma pauperis*. Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). The Court will order Plaintiff to pay the $350.00 civil action filing fee within twenty-eight (28) days of this opinion and accompanying order, and if Plaintiff fails to do so, the Court will order that his action be dismissed without prejudice. Even if the case is dismissed, Plaintiff will be responsible for payment of the $350.00 filing fee in accordance with *In re Alea*, 286 F.3d 378, 380-81 (6th Cir. 2002).

## Discussion

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's

request for the privilege of proceeding *in forma pauperis*.  As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners – many of which are meritless – and the corresponding burden those filings have placed on the federal courts."  *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  For that reason, Congress put into place economic incentives to prompt a prisoner to "stop and think" before filing a complaint.  *Id.*  For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b).  The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit.  *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits.  Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal.  The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury."  The Sixth Circuit has upheld the constitutionality of the "three-strikes" rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation.  *Wilson v. Yaklich*, 148 F.3d 596, 604-06 (6th Cir. 1998); *accord Pointer v. Wilkinson*, 502 F.3d 369, 377 (6th Cir. 2007) (citing

*Wilson*, 148 F.3d at 604-06); *Rodriguez v. Cook*, 169 F.3d 1176, 1178-82 (9th Cir. 1999); *Rivera v. Allin*, 144 F.3d 719, 723-26 (11th Cir. 1998); *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997).

Plaintiff has been an extremely active litigant in this Court, having filed more than thirty civil actions. The Court has dismissed numerous actions by Plaintiff for failure to state a claim. *See Gresham v. Caruso et al.*, No. 2:10-cv-196 (W.D. Mich. Oct. 27, 2011); *Gresham et al. v. Canlis et al.*, No. 2:11-cv-179 (W.D. Mich. July 29, 2011); *Gresham v. Wolak et al.*, No. 2:10-cv-239 (W.D. Mich. July 25, 2011); *Gresham v. Caruso et al.*, No. 2:10-cv-195 (W.D. Mich. Apr. 11, 2011); *Gresham v. Paine et al.*, No. 1:10-cv-1146 (W.D. Mich. Mar. 8, 2011); *Gresham v. Caruso et al.*, No. 1:10-cv-1038 (W.D. Mich. Jan. 26, 2011); *Gresham v. Verville et al.*, No. 2:10-cv-198 (W.D. Mich. Jan. 19, 2011); *Gresham v. Mich. Dep't of Corr. et al.*, No. 2:07-cv-241 (W.D. Mich. June 9, 2008). In addition, the Court has denied Plaintiff leave to proceed *in forma pauperis* on numerous occasions because he has three strikes. S*ee Gresham v. Mutschler et al.*, No. 2:12-cv-9 (W.D. Mich. Feb. 12, 2012); *Gresham v. Violetta et al.*, No. 2:12-cv-24 (W.D Mich. Feb. 6, 2012); *Gresham v. Dahl et al.*, No. 2:12-cv-21 (W.D. Mich. Feb. 6, 2012); *Gresham v. Napel et al.*, No. 2:11-cv-520 (W.D. Mich. Feb. 6, 2012); *Gresham v. Snyder et al.*, No. 2:12-cv-5 (W.D. Mich. Jan. 27, 2012); *Gresham v. LaChance et al.*, No. 2:11-cv-231 (W.D. Mich. June 24, 2011); *Gresham v. Canlis et al.*, No. 2:11-cv-179 (W.D. Mich. June 9, 2011); *Dennis et al. v. Canlis et al.*, No. 2:11-cv-186 (W.D. Mich. June 6, 2011).

This is one of eleven cases filed by Plaintiff since January 2012, in which he seeks to invoke the statutory exception for a prisoner who is under imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g). Congress did not define "imminent danger" in the PLRA, but it

is significant that Congress chose to use the word "imminent," a word that conveys the idea of immediacy.  "Imminent" is "Near at hand . . . impending; on the point of happening; threatening, menacing, perilous.  Something which is threatening to happen at once, something close at hand, something to happen upon the instant . . . and on the point of happening."  BLACK'S LAW DICTIONARY, 514-15 (6th ed. 1991).  "Imminent" is also defined as  "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 1130 (1976).  "Imminent danger" is "such an appearance of threatened and impending injury as would put a reasonable and prudent man to his instant defense." BLACK'S LAW DICTIONARY, 515 (6th ed. 1991).

The Sixth Circuit has recognized the standard previously adopted by other circuit courts:

> While the Sixth Circuit has not defined the term "imminent danger" for purposes of this section, other Circuits have held that to meet the requirement, the threat or prison condition "must be real and proximate" and the danger of serious physical injury must exist at the time the complaint is filed.  *See, e.g., Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001) (en banc).  Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception.  *Id.*  Other Circuits also have held that district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are "conclusory or ridiculous," *Ciarpaglini*, 352 F.3d at 331, or are "'clearly baseless' (i.e. are fantastic or delusional and rise to the level of 'irrational or wholly incredible).'" *Gibbs v. Cross*, 160 F.3d 962, 967 (3d Cir.1998) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

*Rittner v. Kinder*, 290 F. App'x 796, 797-98 (6th Cir. 2008); *see also Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007) (holding that assertions of past danger do not satisfy the imminent-danger exception).  "The imminent danger exception is essentially a pleading requirement subject to the ordinary principles of notice pleading."  *Vandiver v. Vasbinder*, 416 F. App'x 560, 562 (6th

Cir. 2011). Moreover, because he is proceeding *pro se*, Plaintiff "is entitled to have his complaint liberally construed." *Id.* (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

As in many of Plaintiff's actions, the instant complaint recites a litany of sweeping allegations that Plaintiff was deprived of necessary health care and subjected to conspiracy and retaliation by more than 50 Defendants at all levels of the MDOC and two health care companies.[1] Plaintiff's 97-page complaint consists of numerous pages of disjointed allegations, interspersed at random with copies of medical kites, medical responses, grievance forms, commissary order forms, and photocopy requests. The claims themselves are difficult to parse because Plaintiff frequently attributes single acts to a large number of Defendants (without describing any individual's role in the alleged conduct), uses the passive voice, fails to identify any responsible actor, or attributes conduct to actors who are not named as Defendants. Thus, the bulk of Plaintiff's complaint fails to satisfy even basic notice-pleading standards. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim); *see also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing

---

[1]Defendants include Correctional Medical Services, Inc. and Prison Health Services, together with employees of the Michigan Department of Corrections (MDOC), Marquette Branch Prison (MBP) and ICF. ICF employees include: Dr. Richard Czop; Physician's Assistant (PA) Michael Kennerly; Nurses Jody LaBarre and Joann Bunting; Dentist (unknown) McDonald; Psychiatrists (unknown) Anderson, (unknown) Houle, K. Dozeman, (unknown) Choi, (unknown) Jozilin, and J. Apol; Social Worker Whitney Applebaum; Deputy Wardens E. Huss and N. Norwood; Warden J. Prelesnik; Grievance Coordinators M. Breedlove and "Jane Doe"; Inspector B. Goodson; Assistant Resident Unit Supervisor (ARUS) (unknown) Barber; Librarian J. Novak; Lieutenant (unknown) Edwards; Sergeant (unknown) Yates; Resident Unit Manager (RUM) Harold Gilbey; and Corrections Officers (COs) T. Braman, P. Smith, (unknown) Okinin, M. Moran, C. Gawge, and J. Timmerman. The following MBP employees also are named: Warden (unknown) Napel; ARUSs (unknown) Govern and (unknown) Dahl; RUMs (unknown) Mercier and (unknown) Tallio; and COs F. Rascoe, A. Mosley, T. Wolak, T. Oshier, A. Ropan, K. Kangas, P. Eyke, D. Bushong, and K. Patel. Plaintiff also sues the following MDOC administrators: Directors Dan Heyns and Kathleen Mutschler; Grievance Administrators/Specialists Jodi Washington, Sean Lockart, Richard Russell, and Matthew P. Young. (Compl., Page ID#2.)

- 5 -

plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant).  In addition, Plaintiff's allegations are riddled with wholly unsupported legal conclusions, inconsistencies, and palpably absurd statements of fact.

Plaintiff alleges that, between June 2, 2011 and January 29, 2012, while he was housed at MBP, he was told by nine individuals who are not defendants in this action[2] that he would be denied health care until he stopped having conflict with custody staff.  He broadly alleges that, after he transferred to ICF on January 29, 2012, ICF medical personnel told him the same thing. Plaintiff contends that he suffers from numerous health conditions, including two hernias, sleep apnea, heat-related illness, bipolar depression, tumors, cysts that he speculates may be cancerous, and a skin rash he speculates may be MRSA (Methicillin-Resistant Staphylococcus aureas).  For all of these problems, Plaintiff contends that he urgently needs multiple surgeries: hernia repair surgery, surgery to remove the tissue in his neck to stop the sleep apnea, and surgery to remove his cysts.  In addition, he contends that he requires immediate referral to a dermatologist to treat his rash.  Finally, he claims that he has tooth pain caused by decay that was itself caused by Plaintiff's being denied a toothbrush and toothpaste for some unspecified period of time.

Plaintiff alleges that treatment of his hernias is urgently needed because they cause him pain and embarrassment and impair his ability to exercise.  He suggests that he is in imminent

---

[2]Nurses Christine Cheneworth, F. Pascoe, Shannon Montgomery; Nurse Practitioner Cheryl Grant; Nurse Supervisor Mike Grant; Doctors Richard Bohejanen and B. Canlis; PAs Josh Kocha and Margaret Comfort.

danger because the hernias could rupture. Plaintiff also complains that various guards have laughed at his protruding hernias and have ordered him to push them back in before going to the shower. He also alleges that the hernias deform his physical features.

Plaintiff next claims that his sleep apnea is imminently dangerous because it causes him to stop breathing briefly when he is sleeping. He alleges that the apnea is of increased concern in light of his heat-related illness, though he cites no basis for that statement. Plaintiff claims that he meets the imminent danger exception to the three-strikes rule because, absent surgery, his apnea could cause death by asphyxiation.

Plaintiff also asserts that his genital-area cysts cause him to experience pain while urinating or passing a stool. He contends that he is in imminent danger because his cysts could possibly be cancerous or could ultimately grow to prevent him from urinating or defecating.

In addition, Plaintiff alleges that he at imminent risk of suicide or self-harm caused by his bipolar disorder. He asserts that Officer Nehf, who is not a defendant in this action, violated the Eighth Amendment by threatening to have the Defendant psychologists remove Plaintiff from outpatient psychiatric treatment. He contends that, in March 2012, he met with Defendant psychiatrists Applebaum, Apol, Gawge, Timmerman, Choi, Okinin, Houle, Dozeman and Anderson. Following that meeting, Plaintiff's diagnosis ostensibly was changed from bipolar disorder, borderline personality disorder and antisocial personality disorder to mood disorder. At the same time, his medication was changed or reduced. Plaintiff alleges that his past suicidal history demonstrates that the change in diagnosis and the reduction of his medication places him at imminent risk of serious bodily injury. Plaintiff also alleges that various Defendants have told him that he would suffer until he stopped filing lawsuits, and they have encouraged him to commit

suicide.  Despite his allegations that he has been removed from psychoactive drugs, however, Plaintiff simultaneously alleges that he has been forcibly medicated up to the present time with such drugs, including haldol, risperdol, lamictal, remeron, and depakote.[3]  He hypothesizes that one or more of those medications caused him to develop his cystic disorder.

Plaintiff next alleges that, between March 31 and April 19, 2012, Defendant Braman kicked Plaintiff's door while Plaintiff was sleeping on the floor in front of the door, frightening Plaintiff.  Braman allegedly threatened to rape and beat Plaintiff for filing lawsuits.  In addition, Plaintiff alleges that, on April 10, 2012 and April 20, 2012, he told Defendants Yates and Edwards and Sergeant Shroad that officers had issued false misconduct tickets against Plaintiff in retaliation for his complaints.  Defendants Huss, Gawge, Gilkey, Ault, Barber, Gehoski, Norwood, Goodson, and Breedlove also allegedly ignored his complaints of retaliation.

The foregoing allegations do not satisfy the imminent-danger exception.  With respect to Plaintiff's health conditions, including his bipolar disorder, sleep apnea, hernias, skin rash, testicular lumps and tooth pain, there is no indication that any of these conditions present an imminent danger of serious physical injury.  Plaintiff has suffered with and been treated for these conditions over lengthy periods of time.  The attachments to his complaint and supporting documents demonstrate that he regularly has been seen by medical personnel.  (*See*, *e.g.*, Statement in Supp. of Imminent Danger at 3-4, docket #3, Page ID##104-05 (complaining that "all they are doing is calling me out of my cell [e]xamining me asking me is my condition getting worse [a]nd recommending Ibuprofen or dioxcycline [sic] which is inadequate treatment . . . .").)  Although Plaintiff disagrees

---

[3]In another recently-filed action, Plaintiff asserts that he is being treated with "anti-psychotic" medication, including "Haldo[l] . . . risperdol, [and] trazerdol[.]" *Gresham v. Snyder et al.*, No. 1:12-cv-143, Compl., docket #1, Page ID#45 (W.D. Mich. Feb. 10, 2012).

with the course of the medical treatment and insists that surgery is required for one or more condition, no basis exists for concluding that he is in imminent danger of serious physical injury from any of these conditions.  Instead, Plaintiff's allegations of imminent danger rest entirely on Plaintiff's unsupported speculations that one or more condition could get worse, that his cystic condition may be cancerous, and that his skin rash is MRSA.

Further undermining Plaintiff's claim of imminent danger with respect to his bipolar disorder and other health issues is evidence that he refuses to take his prescribed medication and deliberately endangers his health in order to manipulate prison officials.  In a kite attached to his complaint in *Gresham v. Prelesnik*, No. 1:12-cv-276 (W.D. Mich.), Plaintiff asked prison officials to investigate the reason for his transfer to a new cell, threatening, "I will not be taking my medication and refusing it and I will not talk to any outpatient staff if nothing is done about this situation." (Ex. to Compl., 02/17/2012 Prisoner Kite.)  In another kite, Plaintiff complained that his cell is "extremely hot," that he has "heat related illnesses[,] and cannot nor will not take [his] medication."  (Ex. to Compl., 02/17/2012 Prisoner Kite to Lebarre & Gawge.)  Plaintiff then indicates what will happen if prison officials do not transfer him to another cell:

> I am giving you LeBarre and Gawge a few days to immediately remove me from this cell . . . and return me to 2 unit or a cell with working facilities.  If you fail to do this I have an umbilical hernia that all is needed is for me to pull it out once[.] It will cost to have me transferred to the (hospital)[.] From there I will make the additional complaints [] that you are not treating me for cancer and allowing custody staff to retaliate against me[.] Win or lose there will be cost to the state and your reputation is on the line publicly . . . .

(*Id*.)  Plaintiff's refusal to take his medication undermines his allegations that Defendants' changes to his medications placed him in imminent danger of serious physical injury.

- 9 -

In another recently-filed case, Plaintiff asserts that he threatened staff that he would "resort to suicide attempts as he had in the past" to expose their alleged misconduct. *Gresham v. Snyder et al.*, No. 2:12-cv-22, Compl., docket #1, Page ID#20 (W.D. Mich. Jan. 19, 2012). In short, Plaintiff's allegation that Defendants have subjected him to a risk of serious physical injury by aggravating or ignoring his medical problems is unsupported by the allegations of the complaint and is inconsistent with the record in this and other cases.

Finally, Plaintiff's allegations that various Defendants intend to kill him are too vague, conclusory, and/or incredible to satisfy the imminent-danger exception. In addition, his allegation that numerous individuals are conspiring to kill him is unsupported by any facts. Indeed, the incredible nature of Plaintiff's allegations is consistent with his acknowledged mental health conditions and the similarly incredible allegations that he has asserted in numerous other cases filed with this Court, particularly his oft-repeated claim that prison officials at various facilities are conspiring to kill him. *See, e.g., Gresham v. Granholm et al.*, No. 2:09-cv-231 (W.D. Mich. Oct. 7, 2009) (prison staff raped and conspired to kill Plaintiff, who swallowed six inches of metal); *Gresham et al. v. Neubecker et al.* No. 2:11-cv-171 (W.D. Mich. May 9, 2011) (plaintiff was bitten by spiders in his cell, causing swelling on his face and limbs, and a prison officer put a razor blade in Plaintiff's food); *Gresham v. LaChance et al.*, No. 2:11-cv-231 (W.D. Mich. June 13, 2011) (prison officials attempted to have Plaintiff commit suicide by placing metal objects, a razor blade, and over 400 different types of medication in his cell; also, a nurse threatened to give cyanide pills to guards so that Plaintiff could kill himself); *Gresham v. Johns et al.*, No. 2:11-cv-241 (W.D. Mich. June 23, 2011) (Plaintiff ingested a razor blade and over 400 pills because he feared that staff would kill him); *Gresham v. Nepal et al.*, No. 2:11-cv-520 (W.D. Mich. Dec. 28, 2011) (defendants

deliberately left a metal object in Plaintiff's body for over two weeks with the intent to kill him); *Gresham v. Snyder et al.*, No. 2:12-cv-5 (W.D. Mich. Jan. 6, 2012) (mental health staff conspired to claim that Plaintiff is delusional; Plaintiff is under threat of being forced to take psychotropic medications that would likely kill him by paralyzing his lungs); *Gresham et al. v. Mutschler et al.*, No. 2:12-cv-12 (W.D. Mich. Jan. 9, 2012) (prison staff conspired to kill Plaintiff; a female officer had sexual relations with Plaintiff on multiple occasions to bribe him not to pursue his claim that he was raped by other officers); *Gresham v. Dahl et al.*, No. 2:12-cv-21 (W.D. Mich. Jan. 17, 2012) (prison staff conspired to medicate Plaintiff in order to sedate him and leave him vulnerable to sexual assaults; also, prison officers put razor blades and poisonous substances in Plaintiff's food); *Gresham v. Snyder et al.*, No. 2:12-cv-22 (W.D. Mich. Jan. 19, 2012) (a prison officer grabbed Plaintiff's penis and wrote two misconduct tickets on Plaintiff because he refused to engage in sexual activity with the officer); *Gresham v. Violetta et al.*, No. 2:12-cv-24 (W.D. Mich. Jan. 19, 2012) (officers placed pieces of a razor blade in Plaintiff's food and Plaintiff ingested a piece of the blade); *Gresham v. Snyder et al.*, No. 1:12-cv-143 (W.D. Mich. Feb. 10, 2012) (officials are conspiring to make Plaintiff look mentally ill so that he cannot pursue his rape claim, and are forcibly treating him with anti-psychotic medication).

For all of the foregoing reasons, therefore, the Court finds Plaintiff's allegations that he is in imminent danger of serious bodily injury to be "conclusory," "ridiculous," *Ciarpaglini*, 352 F.3d at 331, and/or "wholly incredible," *Gibbs*, 160 F.3d at 967.  Therefore, the complaint fails to satisfy the imminent-danger exception to the three-strikes rule, and § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action.

- 11 -

In light of the foregoing, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action.  Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the entire civil action filing fee, which is $350.00.  When Plaintiff pays his filing fee, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c).  If Plaintiff fails to pay the filing fee within the 28-day period, his case will be dismissed without prejudice, but he will continue to be responsible for payment of the $350.00 filing fee.

Dated:    June 18, 2012                    /s/ Robert J. Jonker
                                           ROBERT J. JONKER
                                           UNITED STATES DISTRICT JUDGE

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:
Clerk, U.S. District Court
399 Federal Building
110 Michigan Street, NW
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**